UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

WINTER GREENES JOINT          :    **CIVIL NO. 1:08-CV-1480**
VENTURE, LLC,                 :
                              :    (Judge Conner)
            Plaintiff         :
                              :    (Magistrate Judge Smyser)
      v.                      :
                              :
PENNSYLVANIA DEPARTMENT OF    :
ENVIRONMENTAL PROTECTION,     :
MONTGOMERY TOWNSHIP,          :
MICHAEL RIFE, individually    :
and in his capacity as        :
Chairman of the Montgomery    :
Township Board of             :
Supervisors, WILLIAM T.       :
COBLE, in his capacity as     :
Supervisor, GREGORY A.        :
WELLER, in his capacity as    :
Supervisor, DEAN E.           :
METCALFE, SR., in his         :
capacity as Supervisor,       :
RONALD L. HISSONG, in his     :
capacity as Supervisor,       :
JACK W. REED, JONATHAN W.     :
PIPER, MICHAEL MCNULTY, in    :
his capacity as Sewage        :
Planning Specialist for       :
DEP, FRANKLIN COUNTY          :
PLANNING COMMISSION,          :
WILLIAM A. BRINDLE,           :
WILLIAM A. BRINDLE            :
ASSOCIATES, INC., D.L.        :
GEORGE & SONS CONSTRUCTION    :
CO., and OLIVER HOMES, INC.,  :
                              :
            Defendants        :

**REPORT AND RECOMMENDATION**

I. Background and Procedural History.


    The plaintiff, Winter Greenes Joint Venture, LLC, commenced

this action in the Court of Common Pleas of Franklin County,

Pennsylvania.  On August 6, 2008, the defendants removed the
case to this court.  On August 19, 2008, the plaintiff filed an
amended complaint.

The defendants named in the amended complaint are: 1) the
Pennsylvania Department of Environmental Protection (DEP); 2)
Montgomery Township; 3) Michael Rife, Chairman of the
Montgomery Township Board of Supervisors; 4) William T. Coble,
a member of the Montgomery Township Board of Supervisors; 5)
Gregory A. Weller, a member of the Montgomery Township Board of
Supervisors; 6) Dean E. Metcalfe, Sr., a member of the
Montgomery Township Board of Supervisors; 7) Ronald L. Hissong,
a member of the Montgomery Township Board of Supervisors; 8)
Jack W. Reed, a former Sewage Enforcement Officer (SEO) for
Montgomery Township; 9) Jonathan W. Piper, an SEO for
Montgomery Township; 10) Michael McNulty, Sewage Panning
Specialist for the DEP; 11) the Franklin County Planning
Commission; 12) William A. Brindle Associates, Inc. (Brindle
Associates); 13) William A. Brindle (Brindle), the president of
Brindle Associates; 14) D.L. George & Sons Construction Co.
(D.L. George); and 15) Oliver Homes, Inc.

The plaintiff's claims arise out of the development of land
in the Winter Greenes subdivision.  The plaintiff alleges the
following facts in its amended complaint.

2

The plaintiff is a limited liability company doing business in Montgomery Township, Franklin County, Pennsylvania.  The plaintiff was formed for the purpose of developing a parcel of land, formerly known as the Collins tract and now known as the Winter Greenes subdivision.

In December of 2004, the plaintiff contracted with defendant Reed for the purpose of obtaining all necessary soil probes and percolation tests for Township approval of on-lot septic sewage disposal in the proposed subdivision.  By February 10, 2005, defendant Reed had completed testing in the proposed Winter Greenes subdivision.  Reed tested 21 of the 23 lots in the proposed subdivision.  In February of 2005, defendant Reed completed and approved a DEP application mailer requesting exemption from planning.  By a letter from defendant McNulty dated May 31, 2005, DEP approved the application.  On-lot septic test approvals were issued for all lots tested by defendant Reed.

The plaintiff contracted with defendant Brindle Associates for engineering services for the design, development, and supervision of the proposed Winter Greenes subdivision and for submission of all necessary documents to the Township to obtain necessary approvals and inspections.  By March 11, 2005, defendant Brindle Associates submitted plans, which obtained

3

preliminary approvals from the Township, for a 23 lot
subdivision.

Defendant Franklin County Planning Commission reviews all
subdivision and land development applications for Franklin
County.  Defendant Franklin County Planning Commission also
reviews DEP planning modules.  Defendant Franklin County
Planning Commission approved the plaintiff's land development
application.

On February 16, 2005, the plaintiff and Oliver Homes entered
into a contract for the sale from the plaintiff to defendant
Oliver Homes of 23 lots in the subdivision based on a periodic
take-down schedule.  Pursuant to the contract, defendant Oliver
Homes was to be the exclusive builder in the subdivision.

In reliance on the approvals of defendants Reed and
Montgomery Township, on March 15, 2005, the plaintiff settled
on the purchase of the Collins tract.  From April 2005 through
August 2006, the plaintiff incurred substantial costs to
develop and improve the land in the subdivision.  The plaintiff
also razed the previously habitable dwelling on the site and
proceeded with the design, engineering and construction of
improvements to the subdivision.

On May 26, 2005, defendants DEP, McNulty and Reed had an administrative conference about defendant Reed's conduct.  In a letter to defendant Reed in advance of the conference, defendant DEP indicated that defendant Reed had "repeatedly failed to comply" with administrative requirements and that it had concerns about some of the sewer systems designed by Reed. The letter advised defendant Reed to show cause why the DEP should not take action pursuant to its statutory power to decertify an SEO.  Defendant Montgomery Township was sent a copy of that letter.

By letter on June 14, 2005, defendant DEP informed defendant Reed that it would closely monitor his activities.  The letter threatened suspension or revocation of defendant Reed's SEO certification if the DEP did not see measurable improvement by December 31, 2005.  The letter cited at least four sewage disposal design modules of poor quality.  Defendant Montgomery Township was sent a copy of that letter.

Thereafter, defendant Reed issued sewage disposal permits and approvals for a large number of applicants including Mountain Brook Estates subdivision and Lot 2 in the Winter Greenes subdivision.  Lot 2 in the Winter Greenes subdivision was approved for construction by defendant Oliver Homes of a model home valued at $650,000.00.

DEP letters approving planning modules for land development in which defendant Reed approved and permitted on-lot sewage disposal were routinely copied to defendant Franklin County Planning Commission.

DEP records are silent concerning any investigation of defendant Reed subsequent to the administrative conference of May 26, 2005 through December of 2005.  Defendant Reed was permitted by defendants DEP and Montgomery Township to continue to issue permits for multiple individual lots, lots in Mountain Brook Estates and Lot 2 in Winter Greenes subdivision. Throughout April, May, June and July of 2006, defendant McNulty continued to review and approve permits issued and approved by defendant Reed.

In April of 2006, defendant Montgomery Township issued final approvals for on-lot septic sewage disposal for the Winter Greenes subdivision.  The finally-approved Winter Greenes subdivision plat was recorded in the Franklin County Recorder of Deeds office on May 1, 2006.

On May 1, 2006, defendant Oliver Homes settled on Lot 2 in the Winter Greenes subdivision.

From May 2006 through the beginning of August 2007, construction continued in the Winter Greenes subdivision.  The

6

plaintiff continued to incur substantial expenses.  By the
beginning of August of 2007, the subdivision was substantially
complete with the exception of such final improvements as
roadway topcoat and street lights.

     During this same period, defendant Reed issued permits for
Lot 10 in Mountain Brook Estates and lots in Holly Heights.
Mountain Brook Estates and Winter Greenes subdivision are
similarly situated, each offering homes by the same builder -
defendant Oliver Homes.  There are additional similarly
situated properties by other developers and owners.

     Defendant DEP scheduled an administrative hearing for
September 14, 2006 charging defendant Reed with misconduct in
violation of Chapter 72, Section 72.41(l) of the Pennsylvania
Code, which requires that an SEO "conduct personally, observe
or otherwise confirm . . . all tests".  In response, defendant
Reed voluntarily surrendered his SEO certification.

     Defendants Rife and Coble were made aware of defendant
Reed's misconduct.  This misconduct was first conveyed by
defendants Rife and Coble to the plaintiff in late 2006.  Some
or all of the defendant Township supervisors, including
defendant Rife, were aware of other instances of misconduct on
the part of defendant Reed.

Defendant Piper was hired by defendant Montgomery Township as primary SEO in October of 2006.  From October 2006 through the spring of 2007, defendants DEP and Montgomery Township pursued retesting of defendant Reed's approvals.  Defendants Piper and McNulty reviewed multiple separate sites.  Finding numerous problems with defendant Reed's prior testing, during this period defendant Piper issued denials and revocations of permits in substantial numbers.  However, Mountain Brook Estates has never been retested.  Also many other properties have never been retested despite known misconduct by defendant Reed.

On November 27, 2006, the plaintiff was notified by the Township that defendant Reed had been decertified and that retesting of Winter Greenes subdivision would be arranged "as the ground becomes suitable."  In a letter dated January 9, 2007 to defendant Montgomery Township, defendant Piper stated that due to defendant Reed's surrendering his SEO certification pursuant to DEP rules and regulations all lots in the Winter Greenes subdivision must be retested at the Township's expense. In a letter dated January 24, 2007, to the Township, defendant Piper recommended that the Township hire a soil scientist.  A site suitability chart identified 9 unsuitable lots and 12 lots suitable for drip irrigation or elevated sand mounds.  The plaintiff and defendant Brindle Associates received a copy of

8

this letter.  Arrangements were made with a soil scientist to complete the testing.

Defendant Montgomery Township has reimbursed or paid for substantially all of the costs of corrections necessary to remedy other property owners' septic installations after retesting.

Lot 2 of Winter Greenes subdivision, owned by defendant Oliver Homes, has never been retested even though the immediately adjacent lots were retested and failed. Additionally, although deep probes that were performed by defendant Reed on property owned by Erin Thomas were reviewed by defendant Piper, the Erin Thomas property was not subject to requirements similar to those imposed on the plaintiff's lots.

Defendant Oliver Homes has not settled on any additional lots in the subdivision in violation of its contract with the plaintiff.  On October 31, 2007, the plaintiff sold Lot 1 to another purchaser.

On or about May 8, 2007, a meeting with the Township was held to discuss the results of the retesting of lots in the Winter Greenes subdivision.  On August 22, 2007, a meeting was held with DEP officials, the Township supervisors, the plaintiff, Brindle, Brindle Associates and others.  At the

9

meeting options for sewage disposal for the Winter Greenes subdivision were discussed.

On October 22, 2007, defendant DEP assessed defendant Reed a monetary civil penalty for violating 25 Pa Code Section 72.41(l).  Two days after the civil penalty was assessed against defendant Reed, defendant Piper issued revocations and denials of at least 12 permits.

On October 23, 2007, defendant Brindle Associates unilaterally terminated its services to the plaintiff.  The plaintiff subsequently retained the engineering services of other firms at great additional expense.  The plaintiff completed a sewer treatment plant module which the Township approved for submission to DEP in April of 2008.  The sewer package plant would be sufficient to restore the economic usefulness of the property.

The Township approved and paid the monthly debt service payments of the plaintiff from May 2007 through April 2008, with the exception of the month of August 2007.  The payments encouraged the plaintiff to continue to incur substantial liabilities and expenses in pursuit of a viable sewage treatment remedy.

During a special meeting on November 13, 2007, defendant
Montgomery Township indicated to the plaintiff that it would
pursue sewer tap-in to the treatment facility at Whitetail.
The plaintiff had previously been led to believe that this was
not available as a viable option.  Both defendant Rife and
defendant Brindle have associations with the Whitetail
facility.  Defendant Rife was a former employee at the facility
and defendant Brindle was its engineer.  From December 2007
through May 2008, the plaintiff pursued the stream discharge
option while the Township concurrently explored the tap-in
option at Whitetail.  The owner of the Whitetail facility has
offered to accept discharge from the Winter Greenes subdivision
for no more than 50 equivalent dwelling units conditioned on
payment by the plaintiff of substantial fees and future per
unit tap fees.

In late 2006, after final approval of the plans by the
Township and after construction of the front entrance to the
Winter Greenes subdivision, the Township's engineer noted
ponding of water at the intersection of the new street and
Blair's Valley Road.  The ponding was caused by deviations by
defendant D.L. George from the approved plans.  As a result of
the Township engineer's allegation that an engineering
redesigned was needed, defendant Brindle Associates submitted a
revised plan for approval by the Township.  By written request
of the plaintiff, however, review of the revised plan has been

11

placed in abeyance by the Township pending resolution of the sewage disposal matters.

In March of 2008, the Township supervisors voted to deny the plaintiff's claims[1] on grounds of sovereign immunity.

The plaintiff claims that defendants Montgomery Township and DEP and their agents have engaged in a pattern of selective enforcement, testing and remedies favoring some properties over others, that defendants Montgomery Township, Township supervisors, Reed and Piper have deprived the plaintiff of valuable property rights by substantially compromising the ability of the plaintiff to sell lots in the Winter Greenes subdivision, and that the margin of difference between findings made by defendant DEP and findings previously made by defendant Reed shocks the conscience and exemplifies false swearing by defendant Reed.

The amended complaint contains ten counts.  Count I contains equal protection and substantive due process claims against defendants Montgomery Township, Rife, Coble, Weller, Metcalfe, Hissong, Piper, Reed, DEP, McNulty and the Franklin County Planning Commission (the government defendants) under the Fourteenth Amendment of the United States Constitution.  Count

---

[1] The plaintiff does not specify what claims were presented to and denied by the Township supervisors.

12

II is a takings claim against the government defendants.  Count
III is titled as a claim against the government defendants for
violation of 42 U.S.C. § 1983.  Count IV contains claims
against the government defendants for breach of implied
warranties and quasi-contractual duties.  There is no Count V
in the amended complaint.  Count VI of the amended complaint
contains claims against the government defendants for breach of
Article III, § 32 of the Pennsylvania Constitution.  Count VII
is a claim for breach of contract against defendants Brindle
and Brindle Associates.  Count VIII is a negligence and
professional malpractice claim against defendants Brindle and
Brindle Associates.  Count IX contains negligence and breach of
contract claims against defendant D.L. George.  Count X is a
breach of contract claim against defendant Oliver Homes.  Count
XI is a claim against defendants Montgomery Township and DEP
for equitable relief.

     Defendants Brindle and Brindle Associates filed an answer to
the amended complaint and a counterclaim against the plaintiff
for breach of contract.  Defendant D.L. George filed an answer
to the amended complaint and a counterclaim against the
plaintiff for breach of contract.  Defendant Oliver Homes filed
an answer to the amended complaint and a counterclaim against
the plaintiff for breach of contract.  The plaintiff has filed
answers to the counterclaims.

The following five motions to dismiss the amended complaint have been fully briefed and are addressed in this Report and Recommendation: 1) the motion to dismiss filed by defendant Franklin County Planning Commission; 2) the motion to dismiss filed by defendant Piper; 3) the motion to dismiss filed by defendants Montgomery Township, Rife, Coble, Weller, Metcalfe and Hissong; 4) the motion to dismiss filed by defendants DEP and McNulty; and 5) the motion to dismiss filed by defendant Reed.

II. Motion to Dismiss Standard.

A motion to dismiss pursuant to Rule 12(b)(6) challenges the legal sufficiency of the plaintiff's complaint; the court must decide whether, even if the plaintiff were able to prove all of his allegations, he would be unable to prevail. *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977). When deciding a motion to dismiss, the court must accept all material allegations of the complaint as true and draw all inferences in the light most favorable to the plaintiff. *Pennsylvania House, Inc. v. Barrett*, 760 F. Supp. 439, 449 (M.D. Pa. 1991). However, "conclusory allegations of law, unsupported conclusions and unwarranted inferences need not be accepted as true." *Id*. at 449-50.

"Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" *Erickson v. Pardus*, 127 S.Ct. 2197, 2200 (2007).  Detailed factual allegations are not required. *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1964 (2007). However, more is required than labels, conclusions and a formulaic recitation of the elements of a cause of action. *Id.* at 1965.  "Factual allegations must be enough to raise a right to relief above the speculative level." *Id.*  Stating a claim requires a complaint with enough factual matter to suggest the required elements of a claim. *Phillips v. County of Allegheny,* 515 F.3d 224, 234 (3d Cir. 2008).  However, "this 'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element." *Id.* (quoting *Twombly*, *supra,* 127 S.Ct. at 1965).  The statement required by Rule 8(a)(2) need only give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests. *Erickson, supra.,* 127 S.Ct. at 2200.  The "notice pleading standard relies on liberal discovery rules and summary judgment motions to define disputed facts and issues and to dispose of unmeritorious claims." *Swierkiewicz v. Sorema*, 534 U.S. 506, 512 (2002)*.*

15

III. Discussion.

    A. Counts I, II and III.

    As indicated above, Count I contains equal protection and substantive due process claims, and Count II contains a takings claim.  Count III is titled as a 42 U.S.C. § 1983 claim.  In Count III, the plaintiff essentially repeats the allegations he made in Counts I and II.  Section 1983 "does not create any new substantive rights but instead provides a remedy for the violation of a federal constitutional or statutory right." *Shuman v. Penn Manor School Dist.,* 422 F.3d 141, 146 (3d Cir. 2005).  Thus, Counts I and II are brought pursuant to Section 1983.  Count III is merely duplicative of Counts I and II.

    Defendants Rife, Coble, Weller, Metcalfe, and Hissong, members of the Montgomery Township Board of Supervisors, argue that the plaintiff's claims against them in their official capacities are redundant of the claims against defendant Montgomery Township and should, therefore, be dismissed. Defendants Piper and Reed, SEOs for Montgomery Township, make the same argument.

    "Official-capacity suits . . . 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'" *Kentucky v. Graham,* 473 U.S. 159, 165-66

16

(1985)(quoting *Monell v. New York City Dept. of Social Services,* 436 U.S. 658, 690 n.55 (1978)).  Claims against an official in his or her official capacity are redundant of claims against the entity and should be dismissed. *See Johnston v. Dauphin Borough*, 1:05-CV-1518, 2006 W.L. 1410766 at *4 (M.D.Pa. May 22, 2006)(Conner, J.).

Since they are redundant of the claims against defendant Montgomery Township, it will be recommended that the claims against defendants Rife, Coble, Weller, Metcalfe, Hissong, Piper, and Reed in their official capacities be dismissed.[2]

1. Equal Protection.

The plaintiff alleges in Count I that defendants Montgomery Township, township supervisors, DEP, McNulty and Piper have engaged in a pattern of actions from October 2006 to the present comprising selective retesting of the properties previously tested by defendant Reed to the detriment and loss of the plaintiff.  The plaintiff alleges that defendants Montgomery Township, township supervisors and Piper have

_____

[2] We also construe the amended complaint as raising claims against defendants Rife, Piper and Reed in their individual capacities.  We will address the claims against defendants Rife, Piper and Reed in their individual capacities in connection with the discussion of the merits of the plaintiff's claims.

17

engaged in a pattern of actions from October 2006 to the present comprising selective remedial action with respect to retested properties to the detriment and loss of the plaintiff. The plaintiff claims that these patterns of actions violate its equal protection rights.

"Under the Fourteenth Amendment, no State shall 'deny to any person within its jurisdiction the equal protection of the laws.'" *Shuman v. Penn Manor School Dist.,* 422 F.3d 141, 151 (3d Cir. 2005)(quoting U.S. Const. amend. XIV, §1).  The Equal Protection Clause "is essentially a direction that all persons similarly situated should be treated alike." *Id.*  In order to establish a viable equal protection claim,  a plaintiff must show an intentional or purposeful discrimination. *Wilson v. Schillinger*, 761 F.2d 921, 929 (3d Cir. 1985).

Since the plaintiff does not allege that it belonged to a protected class, the plaintiff's equal protection claim must be seen to be based on the "class of one" theory announced in *Village of Willowbrook v. Olech,* 528 U.S. 562 (2000).  In order to establish a "class of one" equal protection violation, the plaintiff must establish: 1) that the defendants treated it differently from others similarly situated; 2) that they did so intentionally, and 3) that there was no rational basis for the difference in treatment. *Hill v. Borough of Kutztown,* 455 F.3d 225, 239 (3d Cir. 2006).  An equal protection claim must

18

contain an allegation that the plaintiff has been treated
differently from others who are similarly situated. *Phillips v.
County of Allegheny,* 515 F.3d 224, 244 (3d Cir. 2008).
However, at the pleading stage, a plaintiff is not required to
identify specific instances where others have been treated
differently. *Id.* at 245.

    a.  Defendant Franklin County Planning Commission.

    The plaintiff alleges that the government defendants treated
it differently from others similarly situated.  However, the
plaintiff has not alleged how defendant Franklin County
Planning Commission, which is alleged to have approved the
plaintiff's plans, treated it differently than others similarly
situated.  Accordingly, it will be recommended that the equal
protection claim against defendant Franklin County Planning
Commission be dismissed.

    b. Defendant Reed.

    The plaintiff alleges that defendant Reed engaged in
misconduct with respect to his duties as an SEO.  However, the
plaintiff has not alleged how defendant Reed, who is alleged to
have approved on-site sewage disposal for the Winter Greenes
subdivision, treated it differently than others similarly

situated.  Accordingly, it will be recommended that the equal
protection claim against defendant Reed be dismissed.


    c. Defendant Piper.


    The plaintiff alleges: that, after defendant Reed
surrendered his SEO certification, defendant Piper became the
primary SEO for defendant Montgomery Township; that defendant
Piper reviewed and retested multiple sites, including lots in
Winter Greenes subdivision, that had previously been tested and
approved by defendant Reed; that defendant Piper issued denials
and revocations of permits in substantial numbers; that
Mountain Brook Estates and Winter Greenes subdivision are
similarly situated; that there are other properties similarly
situated to Winter Greenes subdivision; that properties in
Mountain Brook Estates, Lot 2 (owned by Oliver Homes) in Winter
Greenes subdivision, and other properties were not retested;
that there are other documented examples of unequal treatment
by defendants Montgomery Township and Piper; and that
defendants Piper and Montgomery Township have repeatedly
asserted that the criteria for retesting properties is the
decertification of defendant Reed.


    These allegations regarding defendant Piper sufficiently
allege that defendant Piper intentionally treated the plaintiff

differently from other similarly situated property owners.[3]
Further, although the plaintiff does not use the words "no
rational basis," the allegation that the asserted reason for
retesting was the decertification of defendant Reed leads to an
inference that there was no rational basis for defendant
Piper's retesting of some properties that had been previously
approved by defendant Reed but not other properties that had
been previously approved by defendant Reed.  Accordingly, we
conclude that the amended complaint states an equal protection
claim against defendant Piper upon which relief can be granted.

---

[3] Defendant Piper asserts that the plaintiff has failed to
identify similarly situated property owners that were treated
differently.  There is no requirement at the pleading stage
that the plaintiff name names of others similarly situated. *See
Phillips, supra,* 515 F.3d at 244-45.  In any event, the
plaintiff has done so - he identified Mountain Brook Estates as
similarly situated to Winter Greenes subdivision.  Defendant
Piper argues that in fact Mountain Brook Estates and Lot 2
(owned by Oliver Homes) were not similarly situated to the
plaintiff's property because those properties had previously
received a permit but the plaintiff had not received permits
for its lots in Winter Greenes subdivision.  However, the
plaintiff alleges that on-lot septic test approvals were issued
for all lots tested by defendant Reed in the Winter Greenes
subdivision, *doc.* 7 *at* ¶30, and that defendant Montgomery
Township issued final approvals of the Winter Greenes
subdivision for on-lot septic sewage disposal, *doc.* 7 *at* ¶ 54.
Whether the plaintiff is, in fact, similarly situated to other
property owners is a question that the court can not resolve in
connection with a motion to dismiss.

d. Defendant Montgomery Township.

As to defendant Montgomery Township, the question is whether
the plaintiff has alleged a colorable basis for municipal
liability.

A municipality cannot be held liable for the
unconstitutional acts of its employees on a theory of
*respondeat superior. Monell v. Department of Social Servs.,* 436
U.S. 658, 691 (1978). "Rather, a municipality may be held
liable for the conduct of an individual employee or officer
only when that conduct implements an official policy or
practice." *Hill v. Borough of Kutztown,* 455 F.3d 225, 245 (3d
Cir. 2006).

> An individual's conduct implements official policy or
> practice under several types of circumstances, including
> when (1) the individual acted pursuant to formal
> government policy or a standard operating procedure long
> accepted within the government entity, (2) the
> individual himself has final policy-making authority
> such that his conduct represents official policy, or (3)
> a final policy-maker renders the individual's conduct
> official for liability purposes by having delegated to
> him authority to act or speak for the government, or by
> ratifying the conduct or speech after it has occurred.

*Id.* "There must be a 'direct causal link between the municipal
policy or custom and the alleged constitutional deprivation' to
ground municipal liability." *Jiminez v. All American
Rathskeller*, *Inc.,* 503 F.3d 247, 249 (3d Cir. 2007)(quoting

22

*City of Canton v. Harris,* 489 U.S. 378, 385 (1989)).  For an official to have final policy-making authority sufficient to bind the municipality by his conduct, the official must, as a matter of state law, be responsible for making policy in the particular area of municipal business in question and the official's authority to make policy in that area must be final and unreviewable. *Hill, supra,* 455 F.3d at 245.

With respect to its equal protection claim and a policy of defendant Montgomery Township the plaintiff alleges:

> All Government Defendants have individually and collectively engaged in, or allowed Reed to engage in, misconduct that shocks the conscience, primarily, the repeated false documentation of results and constitutes execution of a government's policy or custom, made by the Government Defendants individually and collectively whose acts represent an official policy and inflicted injury."  The Township, the Planning Commission, DEP, SEO Piper, McNulty and Reed each are a decisionmaker possessing final authority to establish to the action each executed in the Reed matter. The Government Defendants had authority and did repeatedly pursue actions with injured Plaintiff by volitionally overlooking misconduct of Reed to pursue investigations at the expense of the Plaintiff and others. The Township specifically let DEP pursue decertification of Reed at the expense of WGJV and others by pursuing by a policy of failing to act in light of evidence while having the powers stop work until an investigation was complete and thereby mitigate lossesThe Government Defendants have engaged in, or allowed Reed to engage in, misconduct that was perpetuated long after its discovery, to the detriment and damage and monetary losses of WGJV and others in the millions of dollars.

Doc. 7 at ¶158 (errors in original).

It appears that the plaintiff is trying to plead a policy or custom on the part of defendant Montgomery Township.  We are

mindful that in deciding a motion to dismiss the court must accept all material allegations of the complaint as true and draw all inferences in the light most favorable to the plaintiff.  Despite doing so, we conclude that such muddled pleading is not sufficient to put defendant Montgomery Township on notice of what the policy or custom is that is alleged to have violated the plaintiff's equal protection rights.

We note that the plaintiff alleges that defendants Reed and Piper are decisionmakers possessing final authority.

"The fact that a particular official - even a policymaking official - has discretion in the exercise of particular functions does not, without more, give rise to municipal liability based on an exercise of that discretion." *Pembaur v. City of Cincinnati,* 475 U.S. 469, 481-82 (1986). "The official must also be responsible for establishing final government policy respecting such activity before the municipality can be held liable." *Id.* at 482-83.

Although the plaintiff has alleged that defendants Reed and Piper are decision makers possessing final authority, it has not alleged that either defendant Reed or Piper had final policymaking authority with respect to the testing of sites. Accordingly, based on the allegations in the amended complaint, defendant Montgomery Township can not be held liable on the

basis of the actions taken by defendants Reed and Piper.
Accordingly, we will recommend that the equal protection claim
against defendant Montgomery Township be dismissed.

        e. Defendant Rife.

    The plaintiff alleges that defendant Rife was aware of
defendant Reed's misconduct, that defendant Rife was present
for the retesting of a lot in Punch Bowl Estates, that
defendant Rife attended the meeting on May 8, 2007 to discuss
the results of retesting of the lots in the Winter Greenes
subdivision and that defendant Rife was involved in discussions
of options other than on-lot sewage disposal for the Winter
Greenes subdivision.  The plaintiff has not alleged how
defendant Rife treated it differently than others similarly
situated.  Accordingly, it will be recommended that the equal
protection claim against defendant Rife be dismissed.

        f. Defendants DEP and McNulty.

    The plaintiff alleges that from October 2006 through the
spring of 2007, defendants DEP and Montgomery Township pursued
retesting of defendant Reed's approvals.  The plaintiff alleges
that other properties similarly situated were not retested.
The plaintiff, however, alleges that it was defendant Piper who
decided which lots to retest.  The plaintiff has not alleged

25

how defendants DEP and McNulty treated it differently than

others similarly situated.  Accordingly, it will be recommended

that the equal protection claim against defendants DEP and

McNulty be dismissed.

     2. Substantive Due Process.

     The plaintiff alleges that all of the government defendants

have, individually and collectively, engaged in or allowed

defendant Reed to engage in misconduct relating to repeated

false documentation of results that shocks the conscience.

     The substantive component of the Due Process Clause limits

what the government may do regardless of the fairness of the

procedures that it employs. *Boyanowski v. Capital Area*

*Intermediate Unit,* 215 F.3d 396, 399 (3d Cir. 2000). "'[T]he

core of the concept' of due process is 'protection against

arbitrary action.'" *Kaucher v. County of Bucks,* 455 F.3d 418,

425 (3d Cir. 2006)(quoting *County of Sacramento v. Lewis,* 523

U.S. 833, 845 (1998)).  "[O]nly the most egregious official

conduct can be said to be arbitrary in the constitutional

sense." *Id.*  Executive action violates substantive due process

only when the behavior of the governmental officer is so

egregious, so outrageous, that it may fairly be said to shock

the contemporary conscience. *Id.*  "In the land use context,

official conduct "shocks the conscience" only where the conduct

26

is the product of 'corruption or self-dealing, bias against an ethnic group, interference with constitutionally-protected activity or a virtual 'taking' of property.'" *Willis v. Carroll Twp.,* 1:07-CV-0949, 2008 WL 644762 at *8 (M.D.Pa. Mar. 5, 2008)(Conner, J.)(quoting *Prosperi v. Twp. of Scott,* No. 06-501, 2006 WL 2583754 at *4 (W.D.Pa. Sept. 7, 2006)).

The plaintiff has not alleged the type of conduct that in the land use context shocks the conscience.  Accordingly, it will be recommended that the plaintiff's substantive due process claims be dismissed.

3. Takings Claim.

The plaintiff claims that the government defendants' actions amounted to a taking or its property without just compensation.

The Fifth Amendment provides that private property shall not be taken for public use without just compensation. U.S. Const. amend V.  "It is well-recognized that this prohibition applies to state and local governments under the Fourteenth Amendment." *Cowell v. Palmer Twp.,* 263 F.3d 286, 291 (3d Cir. 2001).

"The Fifth Amendment does not proscribe the taking of property; it proscribes taking without just compensation." *Williamson County Reg'l Planning Comm'n v. Hamilton Bank of*

27

*Johnson City,* 473 U.S. 172, 194 (1985).  Just compensation need not be paid in advance of or contemporaneously with a taking. *Id.*  "[A]ll that is required is that a 'reasonable, certain and adequate provision for obtaining compensation' exist at the time of the taking." *Id.* (quoting *Regional Rail Reorganization Act Cases,* 419 U.S. 102, 124-125 (1974)).  "Therefore, if a state has provided an adequate procedure for seeking just compensation and a landowner has used those procedures to obtain just compensation, there is no violation of the Takings Clause." *Cowell, supra,* 263 F.3d at 290.  "It follows that 'if a State provides an adequate procedure for seeking just compensation, the property owner cannot claim a violation of the [Takings] Clause until it has used the procedure and been denied just compensation.'" *Id.* (quoting *Williamson, supra,* 473 U.S. at 195).  "Pennsylvania's Eminent Domain Code provides inverse condemnation procedures through which a landowner may seek just compensation for the taking of property." *Cowell, supra,* 263 F.3d at 290.

The plaintiff has not alleged that it availed itself of the procedures under Pennsylvania law to obtain just compensation. Therefore, any takings claim is not ripe.  Accordingly, it will be recommended that the plaintiff's takings claims be dismissed.

B. Count IV.

Count IV contains claims against the government defendants
for breach of implied warranties and quasi-contractual duties.
The plaintiff alleges that the government defendants warranted
by their signatures that the final approvals were valid and
that the government defendants breached such warranties and
their quasi-contractual duties by engaging in policies that
allowed defendant Reed to engage in misconduct that was
discovered and known by the government defendants as early as
May of 2005.  The plaintiff further alleges that it relied upon
the warranties of the defendants to its detriment.

a.   Breach of Implied Warranty.

An implied warranty is imposed by law. 18 Williston on
Contracts § 52:66 (4th ed.).

The plaintiff does not identify what implied warranty the
defendants allegedly breached.  In its briefs, however, the
plaintiff refers to a warranty of finality.  The parties have
not cited any cases in which the Pennsylvania courts have
recognized an implied warranty of finality, and the undersigned
has not located any such cases.

We agree with the defendants that the plaintiff is attempting to plead a negligence claim disguised as a breach of implied warranty claim apparently in an attempt to avoid the immunity afforded by the Political Subdivision Tort Claims Act, 42 Pa.C.S.A. 8541, et seq.  The courts in Pennsylvania have rejected such attempts. *See e.g. Gilius v. Board of Supervisors of Fairview Twp.,* 552 A.2d 327, 330 (Pa.Commw.Ct. 1988).

It will be recommended that the plaintiff's breach of implied warranty claim be dismissed.

b. Quasi-Contract.

The plaintiff claims that the government defendants breached quasi-contractual duties.

"A quasi-contract imposes a duty, not as a result of any agreement, whether express or implied, but in spite of the absence of an agreement, when one party receives unjust enrichment at the expense of another." *Ameripro Search, Inc. v. Fleming Steel Co.,* 787 A.2d 988, 991 (Pa.Super.Ct. 2001).  "The elements of unjust enrichment are benefits conferred on defendant by plaintiff, appreciation of such benefits by defendant, and acceptance and retention of such benefits under such circumstances that it would be inequitable for defendant to retain the benefit without payment of value." *Stoeckinger v.*

30

*Presidential Financial Corp.,* 948 A.2d 828, 833 (Pa.Super.Ct. 2008)(quoting *Styer v. Hugo,* 619 A.2d 347, 350 (Pa.Super.Ct. 1993)).  In determining if the doctrine of quasi-contract applies, the focus in not on the intention of parties; rather, the focus is on whether the defendant has been unjustly enriched. *Ameripro Search*, *supra,* 787 A.2d at 991.  "Where unjust enrichment is found, the law implies a quasi-contract which requires the defendant to pay to plaintiff the value of the benefit conferred." *Id.*

The plaintiff has not alleged the elements of an quasi-contract claim, including that it conferred a benefit on defendants.  Accordingly, it will be recommended that the plaintiff's quasi-contract claim be dismissed.

C.   Count VI.

Count VI of the amended complaint contains claims against the government defendants for breach of Article III, § 32 of the Pennsylvania Constitution.

The defendants argue that monetary damages are not available for violations of the Pennsylvania Constitution.  They cite the case of *Jones v. City of Phila.,* 890 A.2d 1188 (Pa.Commw.Ct. 2006), in which the Commonwealth Court held that there is no separate cause of action for monetary damages for the use of

31

excessive force in violation of Article I, Section 8 of the
Pennsylvania Constitution.  However, *Jones* dealt with a
different Section of the Pennsylvania Constitution than that at
issue in this case.

Whether a direct cause of action under the various
provisions of the Pennsylvania Constitution exists remains
unsettled. *Warren v. Township of Derry,* 1:04-CV-2798, 2007 WL
870115 at *12 (M.D.Pa. Mar. 20, 2007)(Conner, J.).  The
district judge in this case has previously declined to exercise
supplemental jurisdiction over state constitutional claims. *See
Id.*  It will be recommended that the same course be followed in
this case and that, pursuant to 28 U.S.C. § 1367(c)(1), the
court decline to exercise supplemental jurisdiction over the
plaintiff's state constitutional claim.

    D.   Count XI.

In Count XI, the plaintiff is seeking an order from the
court requiring defendants Montgomery Township and DEP to
permit access by the plaintiff to a private or public sewage
treatment facility at the cost of the Township and/or an order
specifically enforcing the Oliver contract against the
Township.  We have recommended that the other claims against
defendants Montgomery Township and DEP be dismissed.  This

Count merely contains a request for a particular form of relief.  It will be recommended that this Count be dismissed.

    E. Leave to Amend.

        "[I]f a complaint is subject to a Rule 12(b)(6) dismissal, a district court must permit a curative amendment unless such an amendment would be inequitable or futile." *Phillips v. County of Allegheny*, 515 F.3d 224, 245 (3d Cir. 2008).  "[E]ven when plaintiff does not seek leave to amend his complaint after a defendant moves to dismiss it, unless the district court finds that amendment would be inequitable or futile, the court must inform the plaintiff that he or she has leave to amend the complaint within a set period of time." *Id.*

    We recommend that the plaintiff be granted leave to file a second amended complaint to attempt, if appropriate based on the facts, to plead a Fourteenth Amendment Equal Protection Claim upon which relief can be granted against the government defendants in addition to defendant Piper[4] and, if it has exhausted it remedies under Pennsylvania's Eminent Domain Code, to plead a takings claim against the government defendants. Since it appears that leave to amend would be futile, we

---

    4. As discussed above, we have concluded that the amended complaint does state a Fourteenth Amendment Equal Protection claim against defendant Piper.

recommend that the plaintiff not be granted leave to replead
its substantive due process, breach of implied warranty and
quasi-contract claims.

IV. Recommendations.

        Based on the foregoing, it is recommended:

        1)   that the motion (doc. 13) to dismiss filed by defendant
Franklin County Planning Commission be granted to the extent
that Counts I, II, III, IV be dismissed for failure to state a
claim upon which relief can be granted and that the court
refuse to exercise supplemental jurisdiction over Count VI.

        2)   that the motion (doc. 17) to dismiss filed by defendant
Piper be granted in part and denied in part in that the claims
under 42 U.S.C. § 1983 against defendant Piper in his official
capacity be dismissed as redundant of the claims against
defendant Montgomery Township, that Counts II, III, IV and the
substantive due process claim in Count I be dismissed for
failure to state a claim upon which relief can be granted, that
the court refuse to exercise supplemental jurisdiction over
Count VI, but that the equal protection claim in Count I not be
dismissed as to defendant Piper;

        3) that the motion (doc. 22) to dismiss filed by defendants
Montgomery Township, Rife, Coble, Weller, Metcalfe and Hissong
be granted in that the claims under 42 U.S.C. § 1983 against
defendants Rife, Coble, Weller, Metcalfe and Hissong in their

34

official capacities be dismissed as redundant of the claims against defendant Montgomery Township, that Counts I, II, III, IV and XI be dismissed for failure to state a claim upon which relief can be granted and that the court refuse to exercise supplemental jurisdiction over Count VI;

4) that the motion (doc. 26) to dismiss filed by defendants DEP and McNulty be granted in that Counts I, II, III, IV and XI be dismissed for failure to state a claim upon which relief can be granted and that the court refuse to exercise supplemental jurisdiction over Count VI; and

5) that the motion (doc. 38) to dismiss filed by defendant Reed be granted in that the claims under 42 U.S.C. § 1983 against defendant Reed in his official capacity be dismissed as redundant of the claims against defendant Montgomery Township, that Counts I, II, III, and IV be dismissed for failure to state a claim upon which relief can be granted, and that the court refuse to exercise supplemental jurisdiction over Count VI.

It is further recommended that the plaintiff be granted leave to file a second amended complaint as outlined above and that the case be remanded to the undersigned for further proceedings.

                                          **/s/ J. Andrew Smyser**
                                          J. Andrew Smyser
                                          Magistrate Judge

Dated:  January 8, 2009.